UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN FRESHWATER, et al.,
        Plaintiffs,

v.

MOUNT VERNON CITY SCHOOL
DISTRICT BOARD OF EDUCATION, et al.,
        Defendants.

Case No.: 2:09-cv-464
JUDGE GREGORY L. FROST
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on the Motion of Defendant Lynda Weston to Dismiss ("Weston's Motion to Dismiss") (Doc. # 14), Plaintiff Freshwater's Memorandum Contra to Weston's Motion to Dismiss (Doc. # 36), and the Reply of Defendant Lynda Weston to Plaintiffs' Memorandum Contra to Weston's Motion to Dismiss (Doc. # 42). For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Weston's Motion to Dismiss.

### I. Background

Plaintiff John Freshwater filed the complaint in this action on June 9, 2009, and an amended complaint on June 18, 2009, which added his wife as a plaintiff. (Docs. # 1, 4.) Freshwater named as defendants the Mount Vernon City School District Board of Education ("Board of Education"), several individual members of the Board of Education, including the Director of Teaching and Learning Lynda Weston, several Mount Vernon City School District employees, David J. Millstone, Thomas J. Herlevi, Julia F. Herlevi, and H.R. on Call, Inc. Freshwater sued Weston in her "professional and personal capacities." (Doc. # 4 ¶ 10.) The following allegations were taken from the amended complaint.

Freshwater was hired by the Board of Education in 1987 and was employed by them as

an eighth grade science teacher until the incidents pertaining to this lawsuit occurred. For 16 of the 20 years that Freshwater taught, he was the faculty appointed facilitator, monitor, and supervisor of the eighth grade group called the Fellowship of Christian Athletes. For his entire teaching career, Freshwater kept a Bible on his desk. Several other teachers employed by the Board of Education also kept Bibles on their desks. Freshwater has been engaged as a private citizen in promoting certain religious activities and liberties in the Mount Vernon, Ohio community.

Throughout Freshwater's employment, he was given performance evaluations on at least twenty occasions, each of which was positive. Freshwater had never been disciplined before the events relevant to the instant action.

During the 2007-2008 school year, Freshwater's students, as a group, earned the highest proficiency scores on the standardized Ohio Achievement Tests when comparing Freshwater's students' scores to all of the other eighth grade groups taught by any other teacher employed by the Board of Education. Freshwater was the only Mount Vernon Middle School science teacher who achieved a "passing" score on the Ohio Achievement Test despite Freshwater having the most students with individualized education plans. Eighty-nine percent of Freshwater's students achieved a passing score on the topic of "Evolutionary Theory," a topic within the "Life Science" curriculum. *Id.* at ¶ 43.

In January 2008, the parents of one of Freshwater's students complained to the president of the Board of Education, Defendant Ian Watson, about an incident in which Freshwater used a device called a Tesla Coil to make a mark that lasted a week and one-half to two weeks on the student's arm. The mark is characterized by Defendants as the religious symbol of a Christian

cross. Freshwater claims that, although he had used a Tesla Coil before, he did not expect it to leave a mark on the student nor did he believe that was even a possibility.

As a result of this complaint, the Board of Education retained counsel, Defendant David Millstone, and requested an investigation of the charges made against Freshwater, which was performed by Defendant H.R. on Call, Inc. and Defendants Thomas J. and Julia F. Herlevi. The contract between the Board of Education and the Mount Vernon Education Association provided the authority for such an investigation. A report on the investigation was provided to the Board of Education. The report indicated that it had interviewed Weston and that "Dr. Weston stated that she has had to deal with internal and external complaints about his (Plaintiff Freshwater) failure to follow the curriculum for much of her 11 years at Mount Vernon." *Id.* at ¶ 114.

Freshwater claims that the way in which he was investigated was discriminatory and harassing based upon Defendants' perception of his religious beliefs and activities. Freshwater "made a public statement about the religious discrimination on April 16, 2008." *Id.* at ¶ 155.

An administrative hearing regarding the charges brought against Freshwater was held in which several Defendants testified. "Defendants Short, Weston and White testified in the hearing they had personal knowledge of or a perceived belief concerning Plaintiff Freshwater's personal religious activities as a result of actions taken by Freshwater during Freshwater's time outside of school duties." *Id.* at ¶ 113. At the hearing Weston testified that the statement in the report that she had received internal and external complaints for much of her eleven years of employment with the Board of Education was "inaccurate." *Id.* at ¶ 115.

On June 20, 2008, the Board of Education passed by vote a resolution titled "*Intent to Consider the Termination of the Teaching Contract of John Freshwater*" ("resolution"), which

stated that Freshwater "consistently failed to adhere to the established curriculum under the American Content Standards for eighth grade as adopted by . . . the Mount Vernon City School Board." *Id.* 4 ¶¶ 23, 24. On July 7, 2008, the Board of Education amended the resolution to correctly identify the curriculum standards as the "Academic Content Standards." *Id.* ¶ 25. The resolution stated that Freshwater taught creationism and intelligent design in his eighth grade science classes, which is not allowed by the Academic Content Standards.

Freshwater denies that he taught creationism and intelligent design. Freshwater claims that at all times since their adoption he followed the Academic Content Standards. Freshwater alleges that the investigation report upon which the Board of Education relied in issuing the resolution included false statements about Freshwater and statements that were taken out of context so that they were inflammatory against Freshwater. Freshwater contends that he was the target of intentional religious discrimination and harassment, being treated differently than his similarly situated coworkers, and that he was deprived of his constitutional rights to free speech and association, equal protection, and due process.

Freshwater filed this action under 42 U.S.C. § 1983 ("Section 1983"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Ohio Revised Code § 4112.02 *et seq*. ("Chapter 4112"), and the common law of Ohio. Freshwater alleges:

    Count 1 - Section 1983 violation of the First and Fourteenth Amendments' rights to free speech, free association, and the exercise of religion - filed against all of the defendants.

    Count 2 - Section 1983 violation of the First and Fourteenth Amendments' rights to equal protection - filed against all of the defendants.

    Count 3 - Section 1983 violation of the First and Fourteenth Amendments' rights to due process - filed against all of the defendants.

Count 4 - Title VII religious discrimination - filed against the Board of Education, superintendent for the Board of Education Steve Short, and principal for the Board of Education William White.

Count 5 - Title VII retaliation - filed against the Board of Education.

Count 6 - Title VII religious harassment - filed against the Board of Education, Watson, Short, and Weston.

Count 7 - Chapter 4112 religious harassment - filed against the Board of Education, Watson, Short, and Weston.

Count 8 - Chapter 4112 hostile work environment - filed against all of the defendants.

Count 9 - Ohio public policy prohibiting retaliation in employment - filed against the Board of Education.

Count 10 - Civil conspiracy to violate Freshwater's civil rights - filed against all of the defendants.

Count 11 - Defamation - filed against all of the defendants.

Count 12 - Breach of contract - filed against the Board of Education, Short, White, Millstone, H.R. on Call, Inc., and Thomas and Julia Herlevi.

Count 13 - Res judicata - filed against the Board of Education.

Count 14 - Negligent retention, supervision, and failure to train - filed against the Board of Education.

Count 15 - Malicious purpose, bad faith, or wanton or reckless behavior - filed against all of the defendants.

Count 16 - Declaratory judgment.

Count 17 - False light invasion of privacy - filed against all of the defendants.

Count 18 - Loss of consortium - filed against all defendants by both Freshwater and his spouse.

Weston filed a motion to dismiss all of the claims filed against her and that motion is now

5

ripe for review.

## II. Analysis

Weston requests that the Court dismiss the claims filed against her based upon qualified and statutory immunity and/or because the claims fail to state a claim upon which relief can be granted.

### A. Failure to State a Claim

Weston moves for dismissal of the Title VII, Chapter 4112, and defamation claims for relief filed against her for their failure to state a claim upon which relief can be granted.

#### 1. Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the United States Supreme Court clarified the plausibility standard articulated in *Twombly*:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.

*Id.* at 1949-50.

The Court then gave direction on how to determine plausibility:

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [*Iqbal v. Hasty*,] 490 F.3d [143] 157-158 [2d Cir. 2007]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Id.* at 1950.

### 2. Application

#### a. Title VII

Freshwater filed claims for relief against Weston in her individual and her official capacities alleging violations of Title VII. Weston argues that she is entitled to dismissal of these claims against her because individuals cannot be held liable in their personal capacities under Title VII and because official capacity liability cannot attach to her because she is not a supervisor as that term is defined in Title VII case law. This Court agrees.

As to the personal capacity claim, the United States Court of Appeals for the Sixth Circuit has held that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Consequently, even when accepting the facts alleged in the amended complaint as true, Freshwater has failed to state a Title VII personal capacity "claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

With regard to official capacity Title VII claims, the Sixth Circuit has explained:

> [T]here is support for the proposition that a supervisor may be held liable [under Title VII] in his or her official capacity upon a showing that he or she could be considered the "alter ego" of the employer. This Court has not clearly and definitively ruled on this issue and we need not do so today. Under the standards set forth in other circuits that allow supervisors to be sued in their official

7

> capacity, Plaintiff has failed to make a showing that Bruzina had significant control over Plaintiff's hiring, firing and working conditions such that he could be considered the "alter ego" of BP. *See, e.g., Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993).

*Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 362 n. 2 (6th Cir. 2001). This Court recently noted that the issue of whether a supervisor may be held liable under Title VII in his or her official capacity "apparently remains unresolved in this Circuit even eight years [after the *Little* court made this oberservation]." *Monsul v. Ohashi Technica U.S.A., Inc.*, Case No. 2:08-cv-958, 2009 U.S. Dist. LEXIS 68680, at *6 (S.D. Ohio Aug. 6, 2009) (citing *Butler v. Cooper-Standard Auto. Inc.*, No. 3:08 CV 162, 2009 U.S. Dist. LEXIS 13448, 2009 WL 455337, at *17 (N.D. Ohio Feb. 23, 2009) ("The Sixth Circuit, however, has left open the possibility that 'a supervisor may be held liable on his or her official capacity upon a showing that he or she could be considered the "alter ego" of the employer.' " (quoting *Little*, 265 F.3d at 362 n.2))). "At least one district court in this Circuit has suggested that such an official capacity claim under Title VII can proceed." *Id.* at *7 (citing *Osman v. Isotec, Inc.*, 960 F. Supp. 118, 121 (S.D. Ohio 1997) ("In light of the overwhelming weight of recent authority, the Court finds that under Title VII a supervisor may be sued only in his or her official capacity as the agent of the employer . . . .")).

In the instant action, this Court need not decide whether a supervisor may be held liable under Title VII in his or her official capacity because, even if there were such liability none lies here. That is, Freshwater makes no allegations that Weston had significant control over hiring, firing, and working conditions such that she could be considered the "alter ego" of the Board of Education. Thus, the amended complaint does not permit the Court "to infer more than the mere possibility of misconduct" and has therefore failed to state a claim that can survive a motion to dismiss for failure to state a claim upon which relief can be granted. *Iqbal*, 129 S.Ct. at 1950.

Accordingly, the Court **GRANTS** Weston's Motion to Dismiss as it relates to all Title VII claims for relief filed against Weston.

### b. Chapter 4112

Freshwater filed claims for relief against Weston for alleged violations Ohio's civil rights statute, Chapter 4112. Weston argues that she is entitled to dismissal of these claims against her because she is not a supervisor and that liability under Chapter 4112 does not extend to non-supervisory personnel. This Court agrees.

Unlike individual liability under Title VII, the Ohio Supreme Court has held "that for purposes of R. C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager in violation of R. C. 4112." *Genaro v. Central Transport, Inc.*, 84 Ohio St. 3d 293, 703 N.E.2d 782, 787-88 (Ohio 1999); *see also Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 n.2 (2000) (recognizing *Genaro's* holding). Liability, however, does not extend to employees who are not in a supervisory position. *See Minnich v. Cooper Farms, Inc.*, 39 Fed. Appx. 289, 296 n. 8 (6th Cir. 2002) (co-employee was not manager or supervisor who could be held liable for harassment under Chapter 4112) (citing *Hale v. City of Dayton*, Montgomery App. No. 18800, 2002 WL 191588 at *2 (2nd Dist., Feb. 8, 2002) ("Ohio courts have refused to extend *Genaro* to non-supervisory employees")).

Here, as stated above, Freshwater does not allege that Weston acted in any supervisory capacity. Freshwater does not allege that Weston had any authority to hire, fire, supervise, evaluate, or manage. Consequently, even when accepting the facts alleged in the amended complaint as true, Freshwater has failed to state a Chapter 4112 "claim to relief that is plausible

9

on its face." *Twombly*, 550 U.S. at 570.

Thus, the Court **GRANTS** Weston's Motion to Dismiss as it relates to both Chapter 4112 claims for relief filed against Weston.

### c. Defamation

Weston moves for dismissal of the defamation claim filed against her because it fails to state a claim that is plausible on its face and because, even if it did, Weston is entitled to a qualified privilege that requires dismissal. This Court disagrees.

In Ohio, "defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.' " *Jackson v. City of Columbus*, 117 Ohio St. 3d 328, 331 (Ohio 2008) (quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St. 3d 1, 7 (Ohio 1995)). Here, the amended complaint easily states a plausible claim for defamation against Weston. That is, Freshwater alleges that Weston made a false statement that affected him adversely in his profession, caused injury to his reputation and exposed him to "public hatred, contempt, ridicule, shame or disgrace." (Doc. # 4 at ¶ 185.) Freshwater alleges that the degree of fault was actual knowledge. That is, the amended complaint states that Weston intentionally made the statement knowing that it was false.

Weston next argues that she is entitled to a conditional or qualified privilege that requires dismissal of the defamation claim. " 'The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper

manner and to proper parties only.' " *Jackson*, 117 Ohio St. 3d at 331 (quoting *Hahn v. Kotten*, 43 Ohio St.2d 237, 243 (Ohio 1975)). " 'In a qualified privilege case, "actual malice" is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity.' " *Id.* (citing *Jacobs v. Frank*, 60 Ohio St.3d 111, paragraph two of the syllabus (Ohio 1991)).

In the instant action, Weston argues that Freshwater's allegations that she acted with actual malice are legal conclusions that are unsupported by factual allegations. This Court, however, disagrees. The amended complaint alleges that Weston knowingly made the false statements at issue here to H.R. on Call Inc. and that Weston herself admitted to doing so when she testified at the administrative hearing on Freshwater's potential termination. Freshwater alleges specifically the content of the false statement and alleges where and when the statement was made. These factual allegations are sufficient to support a claim of defamation and to prevent, at this juncture, Weston's entitlement to a qualified privilege.

Accordingly, the Court **DENIES** Weston's Motion to Dismiss as it relates to the defamation claim for relief filed against Weston.

## B. Immunity

Weston argues that she is qualifiedly immune from liability on all of the federal claims filed against her, *i.e.*, the Section 1983 and Title VII claims for relief. This Court disagrees.

### 1. Qualified Immunity

Qualified immunity is available to defendants who are sued in their individual capacity. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). Qualified immunity is not a defense to the Section 1983 claims filed against Weston in her official capacity. *Everson v. Leis*, 556 F.3d 484,

501 n.7 (6th Cir. 2009) ("As qualified immunity protects a public official in his individual capacity from civil damages, such immunity is unavailable to the public entity itself or the official acting in his official capacity.") (citing *Hall v. Tollett*, 128 F.3d 418, 430 (6th Cir. 1997). Weston does not move for dismissal of the official capacity claims on any basis other than qualified immunity. Thus, the Court **DENIES** Weston's Motion to Dismiss as it relates to the Section 1983 claims filed against Weston in her official capacity.

With regard to the Title VII claims filed against Weston, as this Court indicated above, Title VII imposes no liability on individuals in their personal capacity. Therefore, the doctrine of qualified immunity is irrelevant to Freshwater's Title VII claims against Weston. *See Montgomery County Comm'rs v. Montgomery County*, 215 F.3d 367, 372-73 (3d Cir. 2000) ("Under Title VII, a public official may be held liable in her official capacity only, making the doctrine of qualified immunity, which protects only against personal liability, inapplicable."); *Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990) ("Because the doctrine of qualified immunity protects a public official from liability for money damages in her individual capacity only, the doctrine is inapplicable in the Title VII context.")). Consequently, the Court **DENIES** Weston's Motion to Dismiss as it relates to dismissal of the Title VII claims based upon qualified immunity. But, as previously stated, the Title VII claims did not survive Weston's Motion to Dismiss based upon failure to state plausible claims.

Thus, there are three remaining Section 1983 claims for relief filed against Weston in her personal capacity that Weston argues should be dismissed against her based on the doctrine of qualified immunity. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the

deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Sixth Circuit explained:

> Until recently, federal courts were required to conduct the qualified-immunity analysis using the two-step sequential inquiry set forth in *Saucier v. Katz*, 533 U.S. 194 (2001). The first step required courts to determine "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson*, 129 S. Ct. at 816 (citations omitted). And
>
>> if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.
>
> *Id.* (citation omitted).
>
> In *Pearson* [*v. Callahan*, 129 S. Ct. 808, 815 (2009)], however, the Supreme Court held that the sequential *Saucier* protocol was no longer mandatory. *Id.* at 818. The Court reasoned that
>
>> [t]he procedure sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case. There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.
>
> *Id.*

*Waeschle v. Dragovic*, 576 F.3d 539, 543-44 (6th Cir. 2009) (alterations in original).

In the case *sub judice*, Weston's motion dictates the path of our analysis because she only argues that the facts alleged do not make out a violation of a constitutional right and makes no

13

argument as to whether the right at issue was clearly established. Specifically, Weston argues that she is entitled to qualified immunity because:

> The Complaint and Amended Complaint do not identify any act taken by Defendant Weston that violated Plaintiffs' constitutional rights. Plaintiffs fail to make any allegation that would allow this Court to infer that Defendant Weston's knowledge of Plaintiff's religious activities violated Plaintiff's constitutional rights. Plaintiffs fail to make any allegation that would allow this Court to infer that Defendant Weston's statement in the H.R. On Call investigative report and her subsequent admission that the statement as published in the report was inaccurate violates Plaintiff's constitutional rights. Plaintiffs' conclusory allegations regarding a hostile work environment and religious harassment are unsupported by factual allegations, and do not provide a basis for this Court to consider them when evaluating the merits of this Motion to Dismiss.

(Doc. # 14 at 6-7.)

Freshwater does not respond to these arguments. "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir. 2004)). Indeed, as the Sixth Circuit makes clear:

> "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell* [*v. Forsyth*], 472 U.S. [511,] 526 [(1985)]. Like absolute immunity, the qualified immunity privilege entitles a party to "*immunity from suit* rather than a mere defense to liability," and thus "is effectively lost if a case is erroneously permitted to go to trial." *Id.* (emphasis in original).

*Moldowan v. City of Warren*, 578 F.3d 351, 369 (6th Cir. 2009).

Freshwater has utterly failed to meet his burden of indicating why his amended complaint sets forth constitutional violations that are plausible on their face and the amended complaint on its face simply does not permit the Court "to infer more than the mere possibility of misconduct."

14

*Iqbal*, 129 S. Ct. at 1950. Thus, the Court **GRANTS** Weston's Motion to Dismiss as it relates to the Section 1983 claims for relief filed against Weston in her personal capacity.

**2. Statutory Immunity**

Under the Ohio Revised Code, employees of political subdivisions are statutorily immune from liability unless a statutory exception applies. Ohio Rev. Code § 2744.03. In the instant action, the only exception to employee immunity that could apply is the exception that "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). Weston argues that, although Freshwater alleges that Weston's conduct was malicious, that allegation is a conclusory statements that is unsupported by factual allegations and is, therefore, insufficient to survive a motion to dismiss. This Court disagrees.

In the amended complaint, Freshwater alleges that Weston knew of his religious activities and she acted with "intentional, malicious, reckless and or in gross disregard" of Freshwater's rights by lying during the investigation of Freshwater when she stated that she had to "deal with internal and external complaints about his (Plaintiff Freshwater) failure to follow the curriculum for much of her 11 years at Mount Vernon." Freshwater alleges that Weston's admittedly inaccurate statements were made in combination with an agreement with other defendants to harm Freshwater, were defamatory, and placed him in a false light before the public. Further, Freshwater alleges that Weston treated him differently than she treated his similarly situated coworkers. The Court finds that these factual allegations are sufficient at this juncture to place Weston within the exception to immunity provided for in the Ohio Revised Code § 2744.03(A)(6)(b).

Accordingly, the Court **DENIES** Weston's Motion to Dismiss as it relates to statutory immunity from all state law claims for relief filed against her. But again, the Ohio civil rights statute, Chapter 4112 claims did not survive Weston's Motion to Dismiss based upon failure to state plausible claims.

### III. Conclusion

For the reason set forth above, the Court **GRANTS in part and DENIES in part** Weston's Motion to Dismiss. (Doc. # 14.) Specifically, the Court:

\***DENIES** the motion as it relates to dismissal of the Title VII claims filed against Weston based upon qualified immunity but **GRANTS** the motion as it relates to dismissal of those claims for failure to state a claim upon which relief can be granted;

\***GRANTS** the motion as it relates to both Chapter 4112 claims for relief filed against Weston;

\***GRANTS** the motion as it relates to the Section 1983 claims for relief filed against Weston in her personal capacity;

\***DENIES** the motion as it relates to the Section 1983 claims filed against Weston in her official capacity;

\***DENIES** the motion as it relates to statutory immunity from all state law claims for relief filed against Weston; and

\***DENIES** the motion as it relates to the defamation claim for relief filed Weston.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE